## T. E. Reese v. The State.

### No. 2473. Decided March 12, 1902.

**1.—Bill of Exceptions to Admitted Evidence.**

Objections in a bill of exceptions to the admission of evidence because it is too remote, immaterial, irrelevant, and incompetent, are too general, and do not point out the ground of objection.

**2.—Theft of Cattle—Evidence—Res Gestae.**

On a trial for theft of cattle, what was said and done by defendant at the time he was loading the beef into his wagon in regard to his having killed other animals without any right thereto, was admissible as part of the res gestae, and also as tending to illustrate defendant's intent.

**3.—Evidence to Support Witness.**

Where a witness has not been impeached by his contradictory statements, the fact that proof had been made that he had been offered immunity from punishment if he would testify against defendant, would not authorize the introduction of evidence corroborating the testimony given by him on the trial.

**4.—Theft of Cattle—Evidence—Recorded Brand.**

On the trial for theft of cattle, evidence of a record of the brand is insufficient where it recites, in the alternative, that the brand may be placed on different parts of the same side of the animal, viz., that the brand "X" should be placed on the shoulder or side.

**5.—Same—Claim of Right by Defendant—Charge.**

On the trial of theft of cattle, where one of the issues was a taking by defendant under a claim of right, the charge should have instructed the jury that if they had a reasonable doubt whether or not defendant believed he had a right to take the animal, they should acquit.

Appeal from the District Court of Baylor. Tried below before Hon. J. A. P. Dickson.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The facts disclose that appellant, with I. H. Steed and I. N. Thomas, went out turkey hunting in a wagon with camping outfit and camped at the mouth of Godwin Creek, twenty-two miles from Seymour, in Archer County, within Webb's pasture. Next morning before day Steed and Thomas strolled down the creek six or seven miles hunting turkeys. On their return, about 9 or 10 o'clock, appellant had slain and slaughtered a beef which he claimed as his own. But being killed in Archer County, is without the jurisdiction of the court, and for which he could not have been convicted under this indictment.

On their return to Seymour, late in the evening, they stopped at a waterhole to rest a sick horse. Steed and Thomas went down the creek hunting quail. Reese went up the hill, and after the first two started back to the wagon they heard three Winchester shots. On reaching the wagon Reese was not there. Hitching up and starting towards Seymour, they met Reese, who said, "I have killed another calf." They drove on to where it was lying on its back, skinned. Thomas held the horses while Reese and Steed put it in the wagon. It was quite dark. This was in Baylor County. As they came on through the Bar X gate,

about eight miles east of Seymour, Steed opened the gate and Thomas drove through. Thomas testified: "I heard something drop like a green hide; saw Reese coming back to the wagon; don't know whether he got in the wagon before we started; it was all done in less than a minute."

On the next day, on receipt of a telephone message from Archer, Suttlemeyer, deputy sheriff of Baylor County, approached Thomas, saying, "Ike, you boys killed some beef on the trip, didn't you?" "He hesitated at first to tell me anything about the trip. I told him he might as well tell me the whole thing; that if he took no part in it he would be in no danger; that he would not get himself into any trouble. After dark I went down to Reese's lot and examined, but found no hides. Next morning we arrested Steed and Reese, and then went down to Reese's lot and found a green calf hide claimed to be off the animal killed in Archer County. I made diligent search but could find no other hide. I went to the place where Thomas said he heard it drop, but could find nothing—was at the wrong place. I afterwards took Thomas with me and we went back, but could not find it. The ground was frozen and snow was on the ground. Afterwards I went back and found a hide where Thomas said it was taken out, about fifteen or twenty steps from the gate, in a gully. This hide was branded Bar X, which was the brand of the Bar X pasture owned by Webb."

*Holman & Dalton* and *A. H. Brittain,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of the theft of cattle, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

Appellant's first bill of exceptions calls in question the action of the court admitting the testimony of Ike Thomas, to the effect that after Reese had killed the second beef, which was the one he was charged with stealing, and while the same was being loaded in the hack, defendant was talking about the beef he had killed. Among other things he said that when there was a picnic here some time ago, a beef was given by Cobb for the picnic; and that he (Reese) and another man killed the beef for them, and that he (Reese) then killed a calf and he and the other party divided it; but that Cobb had thousands of them like these fellows in here, in the Crossbar pasture, and waived his hand around. Appellant objected to this testimony because it was a transaction that happened long ago, too remote, immaterial, irrelevant, and incompetent. Under the authority of Hamblin v. State, 41 Texas Criminal Reports, 135, which has since been followed in a number of cases, these objections are too general and do not sufficiently point out the ground. It is not shown how remote said transaction was; nor does the objection state that it was not connected in anywise with the transac-

tion for which appellant was then being tried. However, if it be conceded that the objection properly raised the question, still it occurs to us that what was said and done by defendant at the time was a part of the res gestae; and this conversation, though it may not directly have related to the beef then being loaded on the wagon, yet it serves to illustrate appellant's intent when he remarked in connection with the killing of this beef, that he had killed other beeves without any right thereto. And in that respect it occurs to us that it would have been admissible. The State was permitted to prove by Suttlemeyer that he had a conversation with one Ike Thomas, who was implicated in the theft of this same beef, said conversation being on the next day after the alleged taking, in which said Thomas told witness about the taking of the beef, and gave him a similar account to that which he testified to on the trial. This was objected to on the ground that it was hearsay, not being made in the presence of defendant; and because it was a re-iteration of Thomas' testimony from hearsay by a third party, etc. The court explains the admission of this testimony by stating that when the witness Thomas was on the stand appellant's counsel propounded certain interrogatories to him; attempting to show that he had been promised immunity by said Suttlemeyer from punishment, in consideration of his testifying in this cause; and that the testimony objected to was offered in rebuttal by the State for the purpose of showing that no promise of any sort was made by the said Suttlemeyer to said witness. Said testimony was not admissible. The witness Thomas had not been impeached by showing that he had made a contradictory statement to the testimony given by him on the stand. Rutherford v. State, decided at the present term. Nor did the explanation given by the court render said testimony admissible. The fact that the State or some officer had offered the witness immunity from punishment if he would testify against Reese would not authorize the introduction of testimony by said witness corroborating the testimony given by him on the stand. Of course, it would have been competent for the State, in rebuttal, to have shown, if it could, that said witness had not been offered immunity by the State in consideration of his testimony. This could have been done simply by proving that the State had not offered him such immunity prior to the trial, or prior to some particular time. The testimony of Thomas was the most important against defendant, and it was error on the part of the court to permit him, as was done, to corroborate himself in a way not authorized by law.

During the progress of the trial the State introduced the record of brands of Baylor County, showing the recorded brand of Sydney Webb & Co. to be as follows: O left jaw and X left shoulder or side. This was objected to on the part of appellant on the ground that the place of the brand on the animal was designated in the alternative; that is, as to the X, the brand could be placed either on the shoulder or side; it being contended that this was not in compliance with our statute, which provides that no person shall have more than one brand; and it

further being an offense for any county clerk to record any brand unless .the part of the animal upon which the same is to be placed is designated. Art. 934, Penal Code. Appellant's contention appears to be supported by Massey v. State, 31 Texas Criminal Reports, 91. In that case the record introduced indicated the place of the brand as the left shoulder or thigh; and it was there held that this was not a sufficient designation of the place on the animal where it should be branded. Evidently this was on the ground that the place indicated was uncertain. It might be on the shoulder or it might be on the thigh. Here, the place of the brand was equally uncertain, as it indicated a shoulder or side for the brand. This case appears to be differentiated from Hays' case, 30 Texas Criminal Appeals, 404. In that case the record designated the part of the animal upon which the brand should be placed as the left or right side. While this is in the alternative as to the side of the animal on which the brand is to be placed, the designation is held to be sufficient; citing Thompson v. State, 25 Texas Criminal Appeals, 161, and Harwell's case, 22 Texas Criminal Appeals, 254. So it would seem that the side of the animal where the brand is to be placed need not be designated, or it may be designated in the alternative. If this is an exception to the rule, still it has not been extended further. At least, it is not authority for designating different parts on the same side of the animal in the alternative, for placing the brand. The court committed an error in permitting the introduction of this recorded brand. We would not be understood as holding that the animal was not sufficiently identified by other testimony as the property of Sydney Webb. It was killed in his pasture. The brand on it is a fleshmark. Appellant's claim appears to be of a flimsy character, and there are other circumstances which on another trial may establish the ownership of the alleged stolen cattle. In this connection it may be observed that the charge of the court with reference to the recorded brand being evidence of ownership was erroneous.

The charge of the court on conspiracy is correct in the abstract but it should have been more directly applied to the facts. We think the charge of the court on accomplice in connection with Thomas' testimoney, was sufficient; and it was' not necessary to give the requested instructions. The court's charge limiting the testimony as to the animal alleged to have been stolen in Archer County was sufficient. The charge given by the court predicated on defendant's belief that he had a right to take the same should have been given without imposing upon him the burden of proof; that is, the jury should have been instructed, in connection with said charge, if they had a reasonable doubt whether or not defendant believed he had a right to take the animal, they should acquit.

It is not necessary to discuss other assignments, but for those discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*