## I. H. STEED v. THE STATE.

### No. 2474. Decided March 19, 1902.

**1.—Theft of Cattle—Evidence of Ownership of Beef Market.**

On a trial for theft of cattle, the fact that defendant and another party owned a beef market can not be proved by general reputation.

**2.—Same—Evidence—Record of Brand.**

On a trial for theft of cattle, a certified record of the alleged owner's brand is inadmissible in evidence where the record is uncertain and indefinite as to what portion of the animal the brand is to be placed upon.

**3.—Same.**

On a trial for theft of cattle it is competent for the alleged owner to testify that he ran the $\bar{x}o$ brand in certain counties. This evidence was admissible to identify, although it was not admissible as proof of ownership of the animal, and was admissible although the certificate of his recorded brand was inadmissible as not being in compliance with the statute.

**4.—Same—Acts and Declarations of a Coconspirator.**

On a trial for theft of cattle, the acts and declarations of a coconspirator, when defendant was not present, and after the consummation of the crime, are not admissible for any purpose against defendant.

**5.—Same—Charge as to Principals.**

On a trial for theft of cattle, a charge upon the law of principals is erroneous where the undisputed evidence shows that defendant was not present when the alleged stolen animal was killed; but that after it was killed and butchered he assisted the party who killed it in placing it in a wagon. Under the facts, defendant at most might be a receiver, but was not a principal in the crime alleged.

**6.—Same—Charge as to Conspiracy.**

On a trial for theft of cattle, where the facts tend to establish a conspiracy, the charge of the court should be applied to the facts in the case pertaining to such conspiracy.

**7.—Same—Brand as Evidence of Ownership—Charge.**

On a trial for theft of cattle, it is error for the court to charge the jury, that proof of a recorded brand established ownership, when such recorded brand was not in compliance with the statute.

**8.—Same—Special Instructions.**

On a trial for theft of cattle, where the evidence raised the issue, the court should have given a spcial charge to the effect that, if the animal was killed in A. County, and then brought into B. County (the county of the forum), or if the jury had a reasonable doubt of such fact, they must acquit defendant.

**9.—Same.**

On a trial for theft of cattle, where the evidence raised such issues, the court should have given a special requested instruction that the jury must acquit if they found the animal killed in B. County belonged to defendant's codefendant R., or that defendant believed so; and although the animal taken in A. County was not the property of the codefendant R., and although defendant helped R. to take it fraudulently.

**10.—Same.**

On a trial for theft of cattle, where the evidence raised the issue, the court should have given a special requested instruction, that in order to convict "the evidence must show beyond a reasonable doubt that defendant was an original taker with R. of the animal in B. County, and not an accomplice or accessory, or a receiver of stolen property; and unless the State so shows beyond a reasonable doubt, the jury will find defendant not guilty."

**11.—Same.**

On a trial for theft of cattle, if the animals were the property of defendant's

codefendant R., he, R., had the right to kill them; and if defendant believed that said cattle were R.'s, his taking and killing them would not be a fraudulent taking, and could not support a conviction; and it was error for the court to refuse special requested instructions to that effect.

·Appeal from the District Court of Baylor. Tried below before Hon. J. A. P. Dickson.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with the theft of one head of cattle, the property of Sidney Webb, on the 5th day of December, 1901.

This is a companion case to Reese v. State, ante, page 539. The facts are stated in the opinion.

*A. H. Brittain* and *Holman & Dalton,* for appellant, filed an able and elaborate brief.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was indicted for the theft of one head of cattle, alleged to be the property of Sidney Webb, upon trial was convicted, and his punishment assessed at two years confinement in the penitentiary.

The facts adduced upon the trial are substantially stated in appellant's brief, as follows: "On December 4, 1901, defendant, in company with Ike Thomas and T. E. Reese, went to Godwin Creek, twenty-two miles east of Seymour, in Archer County, turkey hunting. They arrived there about dusk and struck camp. On the way there, according to the testimony of Thomas, Reese asked Thomas if he could keep a secret, to which Steed replied that 'Ike was all right;' and just before reaching the creek Reese shot off his Winchester, and said he had shot at a beef. The next morning defendant and Thomas arose about the time the moon· was rising, and· went down Little Wichita to hunt turkeys. When they had gone about a quarter or half mile from ·their camp, they came upon a camp where three or four trappers were stopping. They continued on down the river for about seven miles, and started back to camp about sun-up. On the way back, they met Steve Perce, an employe of Webb's, and talked to him awhile; and defendant invited him to camp. They came on towards camp and separated just before reaching the camp of these trappers, hunting along as they came. They each stopped and talked to the trappers, defendant being a little in advance, and reached camp first, where they found that Reese had breakfast cooked, and that he had a beef killed, which was branded Lazy B, one of the brands of Webb, but claimed by Reese as his own. (This being in Archer County, was out of the jurisdiction of this court, and was not the offense with which defendant is charged.) They hooked up about 10 or 11 o'clock and started for town; and on reaching a waterhole, seventeen or eighteen miles from town, stopped, ate dinner,

and then went on towards town. About twelve or thirteen miles from Seymour they stopped to rest a sick horse, and defendant and Thomas got their guns and went off down the creek hunting quail, leaving Reese at the camp. They heard three shots, and upon returning found Reese gone; they hallooed for him, and hearing no response, hitched up and drove on down the road towards Seymour, and about a half mile from camp they met Reese. They drove on up the road and came to where a beef had been killed by Reese and skinned. Defendant helped Reese put it in the wagon. Thomas held the horses. It was too dark to tell what was on the animal, Reese saying that it was one of his circle L cattle. They drove on towards Seymour; and eight miles from Seymour, at the gate of the Bar X pasture, Thomas testified that he heard something like a green hide drop from the wagon; that he didn't know whether Reese got out of the wagon or not; that they then came on to town; that Thomas, in company with ˚S. Suttlemeyer, after four trips in search of this hide, found it eighteen‐days days afterwards about fifteen or twenty steps from the road, almost covered up. Thomas went to defendant's home about 12 o'clock on the night after their return, and wanted to know where the hides were. Defendant told him that they were hung on the fence at Reese's. After several searches they found the Lazy B hide, with a lot of other dry hides, in the hog lot at Reese's residence, after defendant and Reese were arrested."

Appellant's first bill of exceptions complains that the court erred in permitting State's witness S. Suttlemeyer to testify that he knew by general reputation who were running and operating the beef market on Washington street, and that defendant and T. E. Reese were generally understood to be the persons who were running and operating said beef market. Ownership of the house in question could not be proved by general reputation. Allen v. State, 15 Texas Crim. App., 320. Bill of exceptions number 4 presents the same question with reference to the testimony of W. S. Harvey.

The sixth bill complains that the court erred in admitting, over the objections of appellant, the testimony of Sidney Webb, that he run the Bar X cattle in Baylor and Archer counties, and as to the position of the brand. Bill number 7 insists that the court erred in admitting in evidence the record of marks and brands of Baylor county as follows:

| No. | Name of Owner. | Residence. | Mark | Brand | Location of Brand. | Date of Registration. |
|-----|----------------|------------|------|-------|--------------------|-----------------------|
| 43 | Webb, Sydney & Co. | Clay Co. | | $\overline{x o}$ | Left jaw, left shoulder, or side. | April 28, 1898. |

Appellant objects to the same because the brand does not specify the part of the animal on which it is to be placed, but allows it to be placed

on the left jaw, left shoulder, or side; because, as recorded, it gives to the owner two brands, contrary to law; because, as recorded, it is no proof of ownership. We think the court erred in admitting this record of brand in evidence. The brand here is indefinite and uncertain as to what portion of the animal it is to be placed. This exact question was decided in Massey v. State, 31 Texas Criminal Reports, 91. We there held, "When the recorded brand is uncertain as to what part of the animal the brand is to be placed, the brand is not in compliance with the law, and is inadmissible for any purpose. If we sustain a brand on the jaw or hip or side, we should be compelled to sustain a brand calling for one place and wherever else about the animal the owner desired to put it, and thus destroying the force of the statute." But because the court erred in admitting the brand, it does not follow that the testimony of Sidney Webb that he ran the $\overline{X}$0 brand in Baylor and Archer counties would not be admissible for all purposes, but it would be pertinent testimony tending to identify the animal alleged to have been stolen. But his testimony, as contended by appellant, could not be introduced for the purpose of proving ownership. As stated, the brand could not be so introduced, because it was not recorded according to the terms of the statute. See article 934, Penal Code (art. 4556, Rev. Civ. Stats.).

Appellant complains that the court erred in permitting Suttlemeyer to testify "that he went out seven or eight miles east of Seymour, and hunted for the Bar X hide, but could not find it; that he came back and learned from Ike Thomas that he had gone to the wrong place; that he made a second trip, and Ike Thomas went with him, but the ground was frozen and covered with snow, and they found nothing; that after the snow was gone he made a third trip, and found the hide where Ike Thomas hold him it was; that he found it in the head of a ditch where the bank had caved off and covered it up, and the wolves had pulled one leg out, and discovering the leg, found the hide." Appellant objected to the testimony on the ground that the same was immaterial and hearsay, and defendant was not present. If, as a matter of fact, defendant was not present after the consummation of the crime, the acts and declarations of a coconspirator could not be admitted for any purpose; and, in view of another trial, we would suggest that, if these be the facts, this testimony should not be admitted.

Appellant complains of the fifth paragraph of the court's charge, as follows:

"All persons are principals who are guilty of acting together in the commission of an offense. When an offense has been actually committed by one or more persons, the true criterion for determining who are the principals is: Did the parties act together in the commission of the offense? Was the act done in pursuance of a common intent, and in pursuance of a previously formed design, in which the minds of all united and concurred? If so, then the law is that all are alike guilty, provided the offense was actually committed during the existence and

in the execution of the common design and intent of all, whether, in point of fact, all were actually bodily present on the ground when the offense was actually committed or not."

Appellant objects because it was not the law of the case, nor warranted by the evidence; on the weight of the evidence; not applied to the facts; misled the jury, and impressed them with the idea that, in the opinion of the trial judge, defendant and others were principals in the commission of the offense, etc. The undisputed evidence shows that appellant was not present when the animal alleged to have been stolen was killed, as will be seen in the statement of the evidence above. Appellant and the accomplice Thomas were absent at the time Reese killed and butchered the animal, and they merely assisted Reese in placing the same in the wagon after it was killed and butchered. Therefore, in law, he would not be a principal to the offense. At most, he would only be an accomplice or a receiver of stolen property. See Joy v. State, 41 Texas Crim. Rep., 46; Dawson v. State (Texas Crim. App.), 41 S. W. Rep., 599; Yates v. State (Texas Crim. App.), 42 S. W. Rep., 296; Bell v. State, 39 Texas Crim. Rep., 677; Walton v. State, 41 Texas Crim. Rep., 454.

The tenth bill complains that the court in its charge submitted to the jury the law of conspiracy. The ground of complaint is that it was not the law of the case, and that said charge was not applied to the facts; that it does not submit to the jury the material facts, but assumes that unnamed persons acted together with unlawful intent in the perpetration of a crime, and assumes a common design and co-operation, and denounces them as coconspirators and principal offenders. Appellant's objections to the charge are well taken. The court should have applied the law of conspiracy to the facts of this case, stating, in substance, that if appellant, with a party or parties jointly indicted or separately indicted, co-operated in the perpetration of the crime, then the acts and declarations of each in pursuance of the common design, and tending to throw light upon the motive and intent of the perpetrators, is competent evidence against each and all of them.

It was error for the court to charge the jury that proof of the recorded brand established ownership, for the reasons heretofore indicated.

Appellant complains that the court erred in failing to give special charge number 4, as follows: "If the animal killed in Archer County was one of Sidney Webb's,—was brought into Baylor County,—the jury can not convict defendant for that offense, although they might believe he was connected with the taking thereof; and, if the jury have a reasonable doubt as to whose animal was killed in Baylor County, they must acquit defendant." This charge should have been given.

The court should also have given the following special charge requested by appellant: "If you believe from the evidence that the animal killed in Baylor County was T. P. Reese's, or he believed it was, you must acquit defendant; or, if you have a reasonable doubt as to this, you must acquit, although you may believe that the one in Archer County

was not Reese's, and defendant helped Reese to take it fraudulently."

Complaint is made of the refusal of the court to give the seventh special charge requested by appellant, as follows: "The court charges the jury that, to convict defendant, the evidence must show beyond a reasonable doubt that defendant was an original taker with Reese of the animal in Baylor County, and not an accomplice or accessory or a receiver of stolen property; and, unless the State so shows beyond a reasonable doubt, the jury will find defendant not guilty." This charge should have been given.

The court erred in refusing special charge number 10, as follows: "The jury are instructed that no man can commit theft of his own property, and if you should find that T. E. Reese owned the animals charged to have been stolen, or if you find that he believed they were his at the time he took them, then it was not theft, although you may believe, under the evidence, that they were not his in fact; and, if you have a reasonable doubt of this, you will acquit the defendant." Appellant testified that Reese said they were his cattle. If they were, Reese had a right to kill them; or, if appellant believed that said cattle were Reese's, his taking and killing of them would not be a fraudulent taking, and could not support a conviction.

We do not deem it necessary to pass upon the other assignments of error. For the reasons indicated, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*