### T. E. Reese v. The State.

#### No. 2363.   Decided May 7, 1902.

**1.—Theft of Cattle—Evidence—Defendant's Statements as to Other Thefts. Charge.**

On a trial for theft of one head of cattle, in a pasture in B. County, evidence of defendant's statement that he had subsequently killed, without authority, another animal in the same pasture in A. County, was admissible to show defendant's intent and motive. But the charge of the court should limit this evidence to the purpose for which it was admitted, and where this has been done, defendant has no ground of complaint in the matter.

**2.—Accomplice Testimony—Corroboration.**

It is competent to prove by an accomplice witness, that, before he was promised immunity, he had told the sheriff and county attorney about the whole transaction. The fact that he had not been promised immunity would go to strengthen his testimony. But he can not corroborate himself by having witnesses, to whom he has made statements, testify as to his statements to them.

**3.—Same—Theft of Other Animals—Charge of Court.**

On a trial for theft of one head of cattle, where evidence has been admitted as to the theft of other cattle, it is error for the court to instruct the jury that the State has introduced evidence tending to prove the theft of other animals than that alleged in the indictment to have been stolen. Such charge is upon the weight of evidence. Following Hudson v. State, 43 Texas Crim. Rep., 420.

**4.—Same—Taking Under an Honest Belief—Charge of Court.**

On a trial for theft of one head of cattle, where one of the issues was, that defendant had taken the animal under an honest belief of a fair claim or right to take the same, on the part of defendant, the court should have charged the jury, that, if they had a reasonable doubt whether or not defendant believed he had the right to take the animal, they should acquit.

**5.—Same—Ownership—Recorded Brand.**

On a trial for theft of cattle proof of ownership by a recorded brand can be made.

Appeal from the District Court of Archer. Tried below before Hon. A. H. Carrigan.

Appeal from a conviction of cattle theft; penalty, two years imprisonment in the penitentiary.

This is a companion case to the cases of Reese v. State, 43 Texas Crim. Rep., 539, and Steed v. State, 43 Texas Crim. Rep., 567.

The case is sufficiently stated in the opinion.

*Holman & Dalton* and *A. H. Brittain,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of the theft of one head of cattle, the property of Sidney Webb, and his punishment assessed at confinement in the penitentiary for a term of two years.

This is a companion case to that of Reese v. State, 43 Texas Crim. Rep., 539, 4 Texas Ct. Rep., 579, decided by us at our recent Dallas term, and the facts are very much like the case of Steed v. State, 43 Texas Crim. Rep., 567, 4 Texas Ct. Rep., 568.

Appellant's second assignment of error complains that the court erred in admitting the testimony of Ike Thomas as to the killing of the Bar X animal in Baylor County, as they returned late in the evening from where said Reese had killed the Lazy B animal in Archer County early that morning; appellant's objection being that it was a different, independent and subsequent transaction, at a different time and place, and threw no light on the intention with which he killed the Lazy B animal in Archer County; that it was not a part of the res gestæ of the first killing, and could serve no purpose of identity with reference thereto, and was inadmissible for any purpose. The facts complained of by appellant are contained in bill number 2 prepared by the court, which among other things contains the following: That the witness Thomas testified that about 1 or 2 o'clock p. m. on the same day on which the animal in controversy was killed, defendant stopped the team that they were driving and said that one of the horses was sick. That on the day before this occurrence defendant, in company with I. H. Steed and witness, in a covered hack, came into this Bar X pasture to take a hunt. They camped in that portion of the same which is in Archer County; that defendant killed a calf at camp the next morning, while witness was away from camp; that after said animal was killed by defendant they started home and stopped for noon, and in the afternoon defendant

stopped the hack, saying that one of the horses was sick. Witness and Steed got out of the hack and went hunting for quail. Witness saw defendant get his Winchester rifle and start out southwest from where they were, and when witness returned to where the hack was he hitched the horses thereto and started home, defendant not being there. After we started we heard three rifle shots in the direction defendant started. In a little while we met defendant, having gone about a fourth of a mile, coming toward us. Defendant stated that he had played hell; that he had shot at an antelope and killed a cow; that he guessed he would just have to take it and pay for it. Witness drove up the road and found a calf killed, skinned and dressed. Steed and defendant put the same in the hack with the other animal. All this was in the Bar X pasture, in Baylor County. Both animals were killed the same day in the same pasture and by the same man. In the morning after defendant killed the first one he told witness it was a deer. The last calf was killed late in the evening. After defendant and Steed put the animal in the hack, Steed said to defendant, "They will know you killed the beef." Defendant said, "No they won't; as they will think some damn camper did it." They also put the head and hide of the last animal in the hack with the first animal; and when we started on and got to the gate leading out of this Bar X pasture (it was getting dark), Steed got out to open the gate and I drove through. When we drove through, witness stopped for Steed to shut the gate, and on one side of the hack about ten steps away witness heard something fall like a hide and looked and saw a man which witness took for defendant, coming away from the place where witness heard the hide fall. Defendant and Steed then got in the hack and we went to Seymour, in the night. Before they got out of the Bar X pasture, and after the last animal was killed, defendant asked witness if he remembered when the picnic was given in Seymour seven or eight years ago; that Cobb gave three cattle; and defendant and another was appointed to come out and kill the beeves for the picnic; that they killed a fourth beef and divided it, and that Cobb was a rich son of a bitch, just like these fellows, and they would never miss it. This was in the Bar X pasture and in Baylor County.

We think all of this testimony was admissible; and if the same had been properly limited to the intent and motive actuating defendant, as the law requires, we see nothing of which appellant could legally com- plain. As indicated by appellant's brief in the Reese case, supra, we held that such testimony might serve to illustrate appellant's intent, when he remarked, in connection with the killing of this beef, that he had killed other beeves without any right thereto.

Appellant's fourth assignment of error complains that the court erred in admitting over his objections the testimony of Ike Thomas on cross-examination by defendant, that he was promised immunity from punish- ment before he testified in either Steed case or in this case, if he would tell all he knew about them; and also, in answer to the State's question,

he testified that he told Joe Wheat (county attorney), S. Suttlemeyer (deputy sheriff), and A. L. Board (sheriff), of Baylor County, all about this whole transaction before he was so promised immunity from punishment. Which was objected to because hearsay, in that it was in defendant's absence, because it seeks to corroborate Ike Thomas by his own testimony. As indicated, this question was also presented in another form, in Reese's case, supra; but there the question was quite different from that now under consideration. After answering the questions appellant here complains of, the court permitted persons to be introduced and testify as to what the accomplice Thomas did tell them. This, we held, could not be done, since it would be permitting an accomplice to corroborate himself. It is always permissible to prove by a witness that he has been promised immunity from punishment, if he testifies; and the theory upon which this testimony is admissible is that the same goes to the credibility of the witness. Then, clearly the converse of the proposition is true. If the witness was not promised immunity, this fact would go to strengthen his testimony, and to give verity to his statement. This can be done; but he can not corroborate himself by having witnesses to whom he has made statements testify as to what he stated to them.

Appellant's fifth assignment of error complains that the court erred in submitting evidence of the killing of a Bar X animal in Baylor County, and the court's attempt to limit it in the following portion of his charge, to wit:

"In this case, the State has introduced evidence tending to prove the theft of other property than that alleged in the indictment to have been stolen. You are instructed that you can only consider such testimony for the purpose for which it was admitted; that is, to establish the identity in developing the res gestæ of the alleged offense, or to prove the guilt of the accused by circumstances connected with the theft (if any) or to show the intent with which defendant acted with respect to the property for the theft (if any) of which he is now on trial; and you will consider it for no other purpose, for you can not convict defendant for the theft of any other property than that named in the indictment; and defendant can not be convicted for the theft of any cattle, unless the taking (if any) on the part of defendant, occurred in Archer County, Texas."

Appellant objects to this charge, "(1) because there was no evidence tending to prove the theft of any other property; (2) there was no ownership shown to the Bar X animal in Baylor County; (3) the only testimony of ownership of the animal defendant killed in Baylor County was by defendant, that it was a Circle L to that he had bought from Lynn Wear; (4) because the transaction in Baylor County had no connection with, and nothing to do with, the shooting of the animal in Archer County on the evening they got to Godwin Creek, and the shooting of the Lazy B animal next morning in Archer County; (5) there was no testimony showing ownership in the animal shot by de-

fendant (according to Ike Thomas' testimony) on Godwin, in Archer County, on the evening they went into camp; (6) because it was on the weight of evidence, in that it charged the jury that there was evidence tending to show other thefts, and was misleading to the jury and prejudicial to defendant," etc. We do not think the court erred, as heretofore stated, in admitting the testimony. We think the circumstances under which the killing of the cattle in Baylor County was done are sufficiently strong to indicate a criminal intent; or at least are sufficiently strong to justify their introduction before the jury upon proper limitation by the court. Hence, we do not think any of appellant's objections to the introduction of this testimony are well taken, except the sixth objection above stated. Under the previous decisions of this court, we think the trial court's charge limiting this testimony is upon the weight of evidence. In Nelson v. State, 43 Texas Crim. Rep., 553, 4 Texas Ct. Rep., 550, we had a similar question under consideration. There the charge of the court complained of was as follows: "The court admitted evidence in this case tending to show that four other persons had several meetings with each other, and that at a meeting several days before the death of deceased, the four persons induced a negro man to sign what was called a 'lie-bill,' and that it was said by some one then and there present that the deceased or others would have to sign a similar paper or leave the country, or made some such remark. This evidence was admitted as tending to show a conspiracy." It will be noted that the only difference in the charge now under consideration and the one cited is that the one cited says "the court admitted evidence in this case tending to show," etc., and in this case the charge is, "that the evidence tending to prove the theft of other property," etc. We see no material difference in these charges, and are of opinion that they are upon the weight of evidence. A similar question to the one now under consideration was passed upon in Santee v. State, 37 S. W. Rep., 436. We there held that an instruction that evidence had been admitted tending to show that at the time defendant was charged to have received the property alleged in the indictment, etc., was erroneous as a charge on the weight of evidence. This matter has also been reviewed by us at some length in Hudson v. State, 43 Texas Crim. Rep., 420, 4 Texas Ct. Rep., 167. We therefore hold that appellant's objection that the charge is upon the weight of the evidence is well taken.

Appellant's seventh assignment of error is that the court erred in charging the jury; "that if you find and believe from the testimony that defendant took the one cattle as described in the indictment, and that said animal was the property of Pearl Wear, or that defendant took said animal under the honest belief that it was the property of Pearl Wear, then, in either event, you will acquit defendant." Appellant objects to said charge, in that it failed to state, "If you have a reasonable doubt as to whether or not he so believed, they should acquit." To cover this objection he requested the following special charge, which

was refused: "The jury are charged if, from the evidence, you find that defendant had any fair color or right to take the cattle alleged to have been taken by him, at the time it was so taken by him; and you find that he took the same under that claim of right, or if you find that he believed it was his cattle, or he had 'a right to take it, or if you have a reasonable doubt that he so believed, then you will acquit." As was indicated in appellant's brief, this question was substantially passed upon by us in Reese v. State, from Baylor County, supra, where we said: "The charge of the court predicated on defendant's belief that he had a right to take the same, should have been given without imposing upon him the burden of proof; that is, the jury should have been instructed, in connection with said charge, if they had a reasonable doubt whether or not defendant believed he had a right to take the animal they should acquit." This charge should have been given.

Appellant's eighth assignment of error complains that the court erred in admitting the testimony of Sidney Webb, who testified that the firm of Sidney Webb & Co. is composed of himself and Samuel Scaling; its brand is O on left jaw and ⊼ on left shoulder. Witness has the exclusive care, control and management of said cattle; that there are about 200,000 acres of land in the Bar X pasture, and about 20,000 head of cattle, and they are branded in Lazy B and Bar X brands. Appellant's objection to this testimony is that it was an attempt to prove by parol the ownership of cattle by brand, when the record of the brand is the best evidence. As repeatedly held by us, proof of ownership by recorded brand can be made, but we do not understand from this bill of exceptions that there was any effort on the part of the State to prove ownership.

We have omitted passing upon some of the questions raised, believing they will not arise upon another trial, and some of the questions have already been discussed in the cases of Steed and Reese v. State, supra. The judgment is reversed and the cause remanded.

*Reversed and remanded.*