## Chas. McClure v. The State.

### No. 519.   Decided May 11, 1910.

**1.—Theft of Hog—Ownership—Fraudulent Taking.**

Where, upon trial for theft of hogs, the evidence did not sufficiently show the alleged ownership or the fraudulent taking of said alleged hogs, the conviction could not be sustained.

**2.—Same—Charge of Court—Principal—Fraudulent Taking.**

Where, upon trial of theft of hogs, the State relied on circumstantial evidence, and there was no evidence that defendant had ever had possession of the alleged stolen property, or had had any connection with the original taking, and the court in his charge so instructed the jury that the defendant could have been convicted as principal whether he participated in the original taking or not, the same was reversible error.

Appeal from the District Court of Angelina.   Tried below before the Honorable James I. Perkins.

Appeal from a conviction of theft of hogs; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. J. Townsend, Jr.,* and *Martin M. Feagin,* for appellant.—On question of the court's charge on principal: McCoy v. State, 44 Texas, 616; Stuckey v. State, 7 Texas Crim. App., 174.

*John A Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This is a companion case to O'Quinn v. State, 55 Texas Crim. Rep., 18.   Much of the testimony contained in the statement of facts in this case is practically the same as that in the O'Quinn case, and it is, therefore, deemed unnecessary to make an extended statement of the evidence.   There is some difference, however, of an important nature.   In this case two witnesses testified for appellant that they were at the residence of Dan Sims on Friday evening when four hogs were killed that were afterwards on Saturday morning taken by Dan Sims and appellant to the town of Lufkin to be sold there to the meat market.   That the hogs were killed in Dan Sims' pen and carried from that point to a slough where they were cleaned.   These hogs had an entirely different mark from those claimed by the alleged owner Thomas.   That early the next morning, somewhere about two o'clock, appellant and Sims got up, hitched the team to a wagon, took the hogs and started to Lufkin.   It is in evidence that the parties went to Lufkin and had a talk with the proprietor of the meat market to whom they had engaged the hogs.   The trade fell through and the parties left.   What became of the hogs is not shown by the record.   The parties and the wagon were traced back to the neighborhood where the hogs were killed, which was ap-

proximately fifteen miles east of Lufkin. Several parties saw the wagon and there were no hogs in the wagon on their return. So the evidence fails to show what became of the four hogs that were carried in a wagon to Lufkin. Nobody identified or undertook to identify the hogs in the wagon ·in Lufkin. The evidence is simply silent on the question as to the description of the hogs so far as their marks were concerned. The hogs, however, were "dressed" hogs. The sheriff instituted an investigation and followed the wagon from the town to the neighborhood where Sims, McClure, Thomas and O'Quinn lived. They investigated a certain place near Brushy Creek for hogs but failed to find any. Subsequently, perhaps the next day, the witness James discovered six hogs at the point previously examined that were in a state of decomposition. There is evidence tending ·to show that the marks on these hogs had been changed perhaps after having been killed, at least there is testimony going to show that fact. The evidence in regard to this particular matter is sufficiently set out in the report of the case of O'Quinn v. State, *supra,* and it is deemed unnecessary to go into any further statement of that phase of the case. It may be necessary here to make this statement: That Thomas, the alleged owner, testified that he saw at Dan Sims' evidence where there had been eleven or twelve hogs killed, and one of the six hogs found in the woods of Brushy Creek had a clubfoot which Thomas thought identified one of his hogs which had a similar clubfoot.

1. Under the testimony there seems to have been two transactions, first, the hogs that were carried to Lufkin were in some manner disposed of, at least not returned to the neighborhood from which they were taken; second, that there were six hogs found in the woods a day or two afterwards which were spoiled. The evidence seems to be to the effect that the hogs taken to Lufkin were not the hogs of Thomas. The State did not prove these hogs to be the property of Thomas, and the appellant proved positively that they were not. It may be stated, as a fact beyond question, that the six hogs found in the woods near Brushy Creek were not the hogs carried to Lufkin. In regard to the first transaction, or those hogs that were carried to Lufkin, the evidence utterly fails to show ownership in Thomas, and practically shows they were not his hogs. In regard to the hogs found in the woods subsequent to the Lufkin transaction, there is slight evidence tending to show that one or two of these hogs may have been the property of the alleged owner Thomas, the one with the clubfoot, and another with regard to which there was some evidence tending to show that she was a sow that had suckled pigs, corresponding in size to one that Thomas said he missed. These hogs had also been cleaned, and there was nothing to indicate ownership otherwise than as stated, and the further fact that Thomas says he missed his hogs from the range. If it be conceded that the testimony is sufficient to show that the club-

footed hog was the property of Thomas, then the evidence is of too weak a character to authorize a verdict of guilty against the defendant as having taken the hogs and deposited them at the place indicated. No witness ever saw him in possession of the hogs, nor did any witness testify that he had taken or was connected with the taking. The circumstances are of too weak a character to justify a verdict of guilty.

2. The court's charge in regard to principals is criticised. That portion of the charge reads as follows: "All persons are principals who are guilty of acting together in the commission of an offense, so, in this case, if you believe from the evidence beyond a reasonable doubt that one or more hogs belonging to William Thomas were fraudulently taken as charged in the indictment, and that the defendant with one or more other persons acted together in such taking and that the defendant was one of the persons so acting, then you will find that defendant is a principal in such offense and convict him as such. By 'acting together,' as above used, is meant that the defendant was present and that the parties acted in concert and toward the accomplishment of a common purpose and object, one performing one part and another another part, in aid of its accomplishment at the time of its perpetration." This is the entire charge of the court in regard to the question of principals. Objection was urged to this portion of the charge and special instructions requested to the effect that in order to warrant a conviction for theft of the hog mentioned in the indictment, the State was required to show to the satisfaction of the jury beyond a reasonable doubt that the owner Thomas lost the hog mentioned by means of theft, and the defendant was the original taker of the hog or had some connection therewith, and that the hog must be identified by such proof and unless the evidence convinces the jury beyond a reasonable doubt that Thomas lost the hog by theft and that the defendant was the original taker or had some connection therewith, and that the hog was identified as the property of Thomas, they should acquit. In the same connection a charge was asked to this effect: That the gist of the offense of theft is the original taking of the property, and unless the jury are satisfied from the evidence beyond a reasonable doubt that defendant took the hog mentioned, if any hog was taken, or had some connection therewith, appellant would not be guilty, and that any subsequent connection by the defendant with the property is not sufficient to constitute theft, and unless the evidence is sufficient to convince the jury beyond a reasonable doubt. that defendant was the original taker of the property or had some connection with such original taking of said property, he would not be guilty. Again, the court was requested to instruct the jury that in order to warrant a conviction for the theft of the hog it devolved upon the State to show by proof to the satisfaction of the jury beyond

a reasonable doubt that appellant participated in or was connected with the original taking of the property and if the proof merely connects the defendant with the property subsequent to its actual taking, it would not authorize a conviction. Again, the court was requested to instruct the jury that the taking of the hog mentioned, if such taking occurred, was completed when said hog was subjected to possession on its accustomed range, and unless the jury find beyond a reasonable doubt that the defendant took the hog on its accustomed range or had some connection therewith, he would not be guilty, and that any subsequent connection therewith by the defendant is not sufficient to constitute theft.

These charges were all refused. In this connection it may be stated that Thomas swore that his hogs were taken from their accustomed range; that he looked the range over for them and failed to find them. Whoever took the hogs, if they were taken from the range by driving them or reducing them to actual possession, was guilty as an original taker. Any one who had connection with the hogs subsequent to such taking would not be a principal. There was no evidence introduced to show how the hogs disappeared from the range or who took them. By circumstances it was sought to connect appellant and Sims with the possession of the hogs, the main fact being there were eleven or twelve hogs killed at Sims' place and carried to a slough and cleansed, and some of the hair found there was similar to that worn by the hogs Thomas said he missed. However, there were quite a number of hogs in the same neighborhood of similar marks and color. But be that as it may, the State for its case relied upon circumstantial evidence. The hogs were never seen in possession of appellant, therefore it was necessary to instruct the jury as requested by appellant, that unless he had connection with the original taking, so as to constitute him a principal, that he would not be guilty, and that his connection with the hogs, if any there was, was subsequent to the taking he could not be guilty as a principal. The court's charge left the matter in such shape that appellant could have been convicted as a principal whether he participated in the original taking or not. The court's charge as given was not sufficiently full and the requested instructions met the omission in the court's charge. Under the circumstances we are of opinion that the court's charge on principals was not sufficient, and it was error to refuse the requested instructions.

The matter suggested for revision in connection with the refusal of a continuance will not be noticed, as it may not occur upon another trial, but as the case is presented we are of opinion that the evidence is not sufficient, and that the court was in error in not giving a full charge on principals, and in refusing the requested instructions. We mention the matter with reference to the evidence so that upon an-

other trial if the evidence is no stronger than developed by this record a conviction ought not to occur.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*