## WARREN CLARK V. THE STATE.

### No. 678.    Decided October 26, 1910.

**1.—Murder—Charge of Court—Principals—Circumstantial Evidence—Presence of Defendant.**

Where, upon trial of murder, the case was one of circumstantial evidence, it was reversible error in the court's charge on principals to say that it was not necessary that the defendant was actually bodily present on the ground when the offense was actually committed. Following McClure v. State, 59 Texas Crim. Rep., 519; 128 S. W. Rep., 386, and other cases. Distinguishing Smith v. State, 21 Texas Crim. App., 277.

**2.—Same—Practice on Appeal.**

Where, upon appeal from a conviction of murder, it appeared from the record that the question raised in appellant's brief would not occur upon a new trial (the case being reversed on other grounds), the same need not be considered on appeal.

**3.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.**

See opinion of the court cautioning State's counsel to avoid argument that trenches on the inhibition to discuss the defendant's failure to testify.

Appeal from the District Court of Cherokee. Tried below before the Hon. Jas. P. Gibson.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Donley & Guinn,* for appellant.—On the question of the court's charge on principals and failure to charge on accomplice: Jones v. State, 57 Texas Crim. Rep., 144, 122 S. W. Rep., 32; Goodwin v. State, 58 Texas Crim. Rep., 496, 126 S. W. Rep., 582; Berry v. State, 58 Texas Crim. Rep., 291, 125 S. W. Rep., 580.

On question of allusion to defendant's failure to testify: Tuller v. State, 58 Texas Crim. Rep., 571, 126 S. W. Rep., 1158; Skidmore v. State, 57 Texas Crim. Rep., 497, 123 S. W. Rep., 1129; Shaw v. State, 57 Texas Crim. Rep., 474, 123 S. W. Rep., 691.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for murder in the first degree, the punishment being assessed at life imprisonment in the penitentiary.

The case is one of circumstantial evidence. The killing occurred on the 7th of August, about dark. Deceased, as indicated by the circumstances, was sitting on his front gallery with his feet on the second step, and his body leaning against the gallery post. The circumstances indicate he was shot from the northwest corner of the gallery at a distance of eight or ten feet with apparently a load of buckshot. The testimony indicates that eleven of the shot struck him in the right side of the head, rather between the ear and the top of the head and in front of the ear, one or two of the shot striking about the right eye. One shot went through and another missed the head and struck a tree some distance beyond where deceased was sitting. The body of deceased was found the next morning. To connect appellant with and show his motive for the killing, evidence was introduced showing that the relations between deceased and his wife were unpleasant, and there had been two separations between them. Evidence was also introduced to the effect that appellant had made overtures of a criminal nature to the wife of deceased, which she declined. This was known to deceased, and on account of this there had been trouble between deceased and appellant. We deem it unnecessary to go into detail of those matters. Deceased was about 43 years of age, his reputation being that of a violent and dangerous man, and he had served several years in the penitentiary for assault to murder. The wife of deceased was a woman about 40 years of age. Appellant was a man about 75 years of age; in one eye he was blind, and the sight in the other very deficient, so much so, by some of the evidence, that he could not see

very clearly in the daytime. Good many facts and circumstances were testified to showing that his eyesight was very feeble and deficient. There was some evidence going to show animosity on the part of appellant towards deceased, and the widow of deceased testified that on one occasion appellant threatened to poison deceased. The reputation of appellant was proved to have been unusually good for a negro. About noon Friday, preceding the killing Friday night, appellant saddled his mule and sent his son over to Jess Stafford, son-in-law of appellant, with instructions to bring him a double-barrel shotgun. The son returned without the gun and informed his father that the house was closed, Stafford and his wife being from home. Under the instructions of appellant the boy returned, raised the window, went in the house, got a double-barrel shotgun and brought it to his father. His father got on his mule and rode away. This was some time after the noon hour. None of the witnesses, however, saw him leave with a gun, and no one saw him with a gun. The son further testified that he went to bed about the usual time that night, at which time his father had not returned, but some time during the night he awoke and heard his father holloing at a mule which was chasing a calf. He was not definite as to the time of night. The evidence seems to be rather clear that appellant after he left his home in the evening, did not return until after his family had retired for the night. It is a little difficult to ascertain the distance from the residence of appellant to that of deceased, but it was approximately something like four or five miles, perhaps much further by traveling the roads. The country seems to be rather rough from the description by the witnesses intervening between the home of appellant and that of deceased. Upon the discovery of the dead body of the deceased the following morning, the sheriff went upon the scene accompanied by one of his deputies, the jailor, and quite a lot of people gathered. Search was made for evidence that might indicate or give a clue to the assassin. None was found near the house that seems to be in any way relied upon, but some five or six hundred yards from where deceased was shot a mule track was found. This was followed some distance, where evidence was also found of a horse following in the trail of the mule. This was followed some distance and lost sight of, night coming on and operations were suspended. During the night it rained very hard and obliterated all evidence of tracks and further investigation along that line ceased. Somewhere down on the side of what the witnesses called a mountain was found a shoe track. This was carefully measured. The measurement of the heel as shown by the track and that found on appellant's foot on Monday corresponded, but there was about an inch and a half difference in length in the measurement of the track as compared with the shoe that appellant was wearing, the right shoe being the one measured. A witness who had been to the town of Rusk, returning home after night, says that two men came run-

ning down off the "side of the mountain," one riding a mule and the other a horse, and came very near running over him, he driving a buggy. He holloed at them. These two parties he says he recognized as Mallard and Stafford. Directly after these parties passed him he says appellant came running down on foot from the mountain and ran by him. They went their way and the witness went his, and saw nothing further of them. Appellant's house was investigated for a gun two or three days after the killing and none found. At Stafford's house, son-in-law of appellant, a double-barrel shotgun was found loaded. One of the witnesses says he unbreeched it and the right barrel gave evidence of having been fired. The theory of the State was that there were others concerned in the killing. Several were arrested and Stafford was subsequently indicted and was in jail at the time of this trial charged with the killing. As to Mallard, whom the State's witness testified as having come down the side of the mountain on horseback, it is shown perhaps conclusively that he was not at the place indicated by the witness, but was attending a meeting at the Cumberland Presbyterian Church some miles in a different direction. Stafford proved a complete alibi. There was quite a lot of contradictions and impeachments and things of that sort that usually grow out of a case of this character.

1. The court charged the jury with reference to the law of principals. After giving a general definition of this phase of the law, the court gave the following: "When an offense has been actually committed by one or more persons, the true criterion for determining who are principals is, did the parties act together in the commission of the offense; was the act done in pursuance of a common intent and in pursuance of a previously formed design in which the minds of all united and concurred? If so, then the law is, that all are alike guilty, provided the offense was actually committed during the existence and in the execution of the common design and intent of all, whether in point of fact all were actually bodily present on the ground when the offense was actually committed or not." Then follows a charge on circumstantial evidence. This charge has been held erroneous in many decisions, McClure v. State, 59 Texas Crim. Rep., 277, 128 S. W. Rep., 386, being one of the latest cases. There are cases like that of Smith v. State, in 21 Texas Crim. App., 96, where the principals were engaged in the common purpose, one doing one part and another another part in which they could be held as principals, and this charge would not be held erroneous, at least reversibly so, if, as a matter of fact, the party was not on the ground or was not present. But where the offense was committed in pursuance to a conspiracy or by the advice of the absent conspirator, he not being present or doing anything in aid of the conspiracy, this charge could not be the law. This was a case of circumstantial evidence. Appellant's connection with the crime is one of inference or deduction. His participation in the offense, if at

all, was to be ascertained from circumstances. The court, recognizing this fact, gave a charge on circumstantial evidence as the law required should be done. If appellant advised the parties or furnished the gun, or the mule for the parties to ride, and they killed deceased, and appellant was not present and participating in it or doing some act such as to make him a principal, then he was not guilty under this indictment. The charge given by the court would authorize a conviction of appellant, although he was not present or in any way participating in the killing in such manner as the law denounces principals. We are of opinion that this charge, under the facts of this case, and where the issue of accomplice was not submitted and no definition of that term given, was erroneous. The facts and circumstances do not show with any degree of conclusiveness that appellant was present at the time and place of the killing. In fact, these circumstances were fully as strong to show that he was not present. The charge on circumstantial evidence recognizes the fact that the State was forced to rely upon circumstances to connect appellant with the homicide, and did not have positive evidence to show that appellant was present, and by these means a principal. If appellant furnished the gun to another party for the purpose of shooting the deceased, and that party did shoot the deceased, appellant not being present, he would not be a principal, but only could be an accomplice. Under the facts and circumstances, and the wording of the charge, appellant requested a special instruction presenting the law in regard to accomplice as a party to the homicide, and this from different standpoints. We deem it unnecessary to copy into the opinion this requested instruction. If appellant advised the parties, furnished the gun, and the mule for one of them to ride to the place of the homicide, he not being present nor participating further in the transaction, by doing some act such as would constitute him a principal, then he could not be guilty under this indictment. Under the terms of the charge given by the court the jury were authorized to convict appellant, although he was not present or in any way participating in the killing in such manner as the law denounces principals.

2. There was a question raised with reference to the impaneling of the jury, also to the argument of the district attorney, and statements in the jury room in regard to appellant's failure to testify. Without going into a discussion of those matters, as they will not occur upon another trial, we caution the district attorneys to avoid arguments that trench upon this inhibition of the statute, and the jury should not discuss the failure of a defendant to testify.

3. There is also a bill of exception in regard to the introduction of some hearsay statements made by the sheriff in regard to appellant having had another party placed under arrest for the killing.

Vol. LX. Crim.—12.

This will not occur upon another trial, and it is unnecessary to discuss it.

For the error pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*