### FRANK TRIMBLE V. THE STATE.

*No. 484.   Decided May 26.*

1. **Theft—Evidence—Principals.**—In order to constitute a party a principal in the crime of theft, it devolves upon the State to establish by evidence his complicity in the original "taking." This may be shown by circumstantial evidence.

2. **Same—Conspiracy.**—On a trial for hog theft, *Held*, that if, in pursuance of an agreement or conspiracy, or in furtherance of the common design, defendant was to build the pen in which to put the stolen hogs, and did build it, and his confederates were to go after the hogs and drive them to said pen, which they did, then defendant would be a principal. Following Smith v. The State, 21 Texas Crim. App., 107.

3. **Same—Fresh Larceny.**—Where stolen hogs were placed in a pen built by defendant, and they afterwards escaped entirely from said pen, they are in law again in possession of their owner; and if they be again taken by defendant, it is a fresh larceny, for which he could be prosecuted and punished.

APPEAL from the District Court of Houston.   Tried below before Hon. A. B. WATKINS.

Appellant, Bob Stewart, and Will Baynes were separately indicted for the theft of eleven hogs, the property of S. H. Rook.   Bob Stewart pleaded guilty, Will Baynes was convicted, and appellant at the trial was also convicted, his punishment being assessed at two years' imprisonment in the penitentiary.

S. H. Rook testified to losing eleven hogs that he had running in an old field.   Some days afterwards he found one of these hogs in the range with his ear marks freshly changed.   He and some of his neighbors commenced to search for the lost hogs, and learned where they had been killed.   Went to Bob Stewart's house and found the meat of seven hogs buried near the side of the house.

William Forbes testified to seeing defendant, Bob Stewart, and Will Bayne killing hogs on Sunday night at Bob Stewart's spring.   Bob Stewart's wife was there also.

Mollie Stewart testified:   "I am the wife of Bob Stewart.   On Saturday evening, before the hogs were killed on Sunday night, the hogs were put in Bob Stewart's field.   I saw Jake Bowden and Bob Stewart with the hogs when they were put in the field.   Just a short time before they came defendant came to my house and asked if they had come.   He then went off.   I did not see him at the time the hogs were put in the field, nor did I see Will Bayne at the time.   Can't say where they were.   On the next morning the defendant and Bob Stewart drove the hogs out of the field and put them in a pen which the defendant made, down under the hill near the spring where they were killed.   The hogs broke out of this pen and got away.   Will Bayne made another pen.   He and defendant gathered up the hogs and put them in this pen.   They did not get out of this pen.   The last pen was made of planks nailed to trees.   On Sunday night they killed ten of these hogs, and re-marked one of them and turned it loose.   This pen and place where the hogs were killed was on the side of a horse and cattle pasture, with a fence made of three wires, the lowest wire being about two or three feet from the ground.   This pasture belongs to R. C. Spinks, and he keeps his cattle in there.   The hogs did not get outside of this pasture.   When they had killed seven of the hogs, defendant and Will Bayne carried them to the house, and Bayne remained at the house and cut up the meat, while Stewart and defendant finished killing the other hogs.   Of those he carried to the house he cut off the ears and burned them in the fireplace.   The meat was first salted down in the rooms of our house; the entrails, hair, etc., were burned down at the spring.   My husband, Bob Stewart, came to Crockett on Monday after the hogs were killed on Sunday night, and that night Will Bayne came to our house and told Bob Stewart that Rook was out hunting his hogs, and that the meat must be put away

somewhere, and they buried it in the yard, where Rook found it. Defendant was not present when the meat was buried. The defendant nor Will Bayne took any meat with them the night it was killed. They afterwards came back and got it. · On Monday night the defendant came with Wayman Williams over to where we were, at my father's, and told Bob Stewart he wanted to get his meat, and for him to come and go with him or let him have the key to his house. At the time the hogs were killed I did not know to whom they belonged, nor did I know where these parties got them. I knew they did not belong to Bob Stewart, and were stolen. I had nothing to do with the taking of these hogs nor with the killing or dressing of same, but was pres., ent and saw most of them killed. I am the wife of Bob Stewart. He plead guilty in this case. Jake Bowden is a white man, and lives about one mile from us. Bowden and Stewart drove the hogs into Stewart's field on Saturday evening. Defendant staid all night with us on Saturday night, and was there on Sunday and all Sunday night until daylight Monday morning. Defendant and Bob Stewart drove the hogs by the house on Sunday morning. The field they were in is a good-sized field. They were then taken out of this field and put in a pen in the Spinks cattle pasture. Bob Stewart kept some of the hog heads. Will Bayne got some and defendant got some. Will Bayne was the one who·burned the hogs' ears and feet."

W. H. Craiger, for the State, testified to finding some of the meat at Will Baynes' and some at Calvin Williams', where defendant lived.

The defense was an alibi, and also that the defendant was a hired hand.

. Among other matters the court charged the jury, as follows: "But if when the hogs were first taken (if they were taken) the said hogs got out of the possession of the party so taking them, and the defendant thereupon fraudulently assisted in retaking and again reducing the said hogs to such an unlawful possession and control, then it would not matter whether the defendant was a party to the first taking or not."

*H. W. Moore*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant's contention, that "in order to constitute the accused a principal in the crime of theft, it devolves upon the State to establish his complicity in the original taking," is a correct enunciation of the law. This complicity may be shown by circumstances, and should be proved by the best attainable evidence. If, in pursuance of an agreement or conspiracy, or in furtherance of the common design, the appellant was to build the pen in which to

place the stolen hogs, and did build it, and his confederates were to go after the hogs and drive them to said pen, and did so, then he would be a principal. Smith v. The State, 21 Texas Crim. App., 107.

The hogs were placed in the pen built by appellant, and afterwards broke out and escaped. If they entirely escaped from the control of their captors, in law they would, in that event, be in the possession of their owner again. In such state of case a second taking would be a fresh larceny, and the taker could be punished therefor. The charge of the court correctly states this phase of the law. There was no request by appellant to require the State to elect upon which taking the conviction would be asked. The evidence as to the extent of the escape of the hogs is not as definite as it might have been; yet such escape was shown, and not denied by appellant. Appellant built the first pen in the cattle pasture of R. C. Spinks, as was also the second pen. After the second pen was constructed, appellant and Bayne went after and brought back the hogs and put them in the pen, and they and Stewart killed them the following night. This pasture was fenced by three wires, the lower one being from two to three feet above the ground. This would afford no bar to the escape of the hogs therefrom; but, as a matter of fact, they did not go out of the pasture, and were still in there when driven to the second pen. We are of opinion this evidence was sufficient predicate for the charge given in regard to a second taking.

In addition to other inculpatory facts, one witness testified to appellant's confession of guilt on the examining trial. This confession was, in a qualified manner, contradicted by the justice who tried the cause. The State's witness was positive as to the confession, whereas the justice was very doubtful on this point.

We are of the opinion the evidence supports the conviction, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.